IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:26-cr-4 (RDA) |
| | ) | |
| MARIO ALEXANDER BONILLA | ) | |
| CANALES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND VERDICT

This matter came before the Court for bench trial on the Government's charges against Defendant Mario Alexander Bonilla Canales of: (i) Attempted Coercion and Enticement of a Minor in violation of 18 U.S.C. § 2422(b) (Count One); (ii) Attempted Sexual Exploitation of a Child in violation of 18 U.S.C. § 2251(a) and (e) (Count Two); and (iii) Illegal Reentry after Removal Subsequent to a Felony Conviction in violation of 8 U.S.C. § 1326(a) and (b)(1) (Count Three). A bench trial was held before the Court on June 8, 2026, and June 9, 2026. Having carefully considered the evidence presented at trial and the arguments presented by counsel, the Court finds Defendant GUILTY beyond a reasonable doubt of each Counts One, Two, and Three charged in the Second Superseding Indictment.

## I. BACKGROUND

On January 15, 2026, Defendant was charged by Indictment with a single count of Illegal Reentry After Removal Subsequent to a Felony Conviction pursuant to 8 U.S.C. § 1326(a) & (b)(1). Dkt. 14. Defendant was arraigned on the original Indictment on January 21, 2026, and a jury trial was originally set for March 2, 2026. Dkts. 18, 20.

On February 10, 2026, Defendant was charged in a four-count Superseding Indictment with two counts of Attempted Coercion and Enticement of a Minor pursuant to 18 U.S.C.§ 2422(b),

one count of Attempted Production of Child Pornography pursuant to 18 U.S.C. § 2251(a) & (e), and one count of Illegal Reentry After Removal Subsequent to a Felony Conviction pursuant to 8 U.S.C. § 1326(a) & (b)(1). Dkt. 25. Defendant was arraigned on the first Superseding Indictment on February 18, 2026, and a jury trial was set for April 13, 2026. Dkts. 28, 29.

On March 20, 2026, the Government filed a Motion *in Limine* to admit certain documents from Defendant's alien file or "A-file" at trial. Dkt. 32. Defendant did not file a response.

On April 8, 2026, the Court held a status conference during which Defendant waived his right to trial by jury and signed a waiver stating that he was knowingly, freely, and voluntarily waiving that right. Dkts. 34, 35. Defendant also signed a waiver of his speedy trial rights (Dkt. 36) and the Court determined that setting a trial beyond the speedy trial deadline was in the best interest of the public and Defendant, and a bench trial was set for June 8, 2026 (Dkt. 37).

On May 26, 2026, Defendant was charged in a three-count Second Superseding Indictment with Attempted Coercion and Enticement of a Minor to Engage in Illegal Sexual Activity pursuant to 18 U.S.C. § 2422(b), Attempted Sexual Exploitation of a Child pursuant 18 U.S.C. § 2251(a) & (e), and Illegal Reentry After Removal Subsequent to a Felony Conviction pursuant to 8 U.S.C. § 1326(a) & (b)(1). Dkt. 44. In Count One, the grand jury charged that:

> In or about June of 2025, within the Eastern District of Virginia and elsewhere, the defendant, MARIO ALEXANDER BONILLA CANALES, using a facility and means of interstate and foreign commerce, did knowingly and unlawfully attempt to persuade, induce, entice, and coerce an individual who he believed had not attained the age of 18 years, to engage in sexual activity for which any person can be charged with a criminal offense, including but not limited to violations of Code of Virginia Sections 18.2-63 (carnal knowledge of a child) and 18.2-374.1 (production of child pornography), and violations of United States Code Sections 2251(a) and (e) (attempted sexual exploitation of a minor).

*Id.* at 1. In Count Two, the grand jury charged that:

2

> From on or about June 16, 2025 to on or about June 20, 2025, within the Eastern District of Virginia and elsewhere, the defendant, MARIO ALEXANDER BONILLA CANALES, attempted to knowingly employ, use, persuade, induce, entice, and coerce a minor to engage in any sexually explicit conduct for the purpose of producing a visual depiction of such conduct knowing and having reason to know that such visual depiction would be transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce.

*Id.* at 2. In Count Three, the grand jury charged that:

> On or about June 20, 2025, at or near Fairfax County, Virginia, in the Eastern District of Virginia, the defendant, MARIO ALEXANDER BONILLA CANALES, an alien, was found in the United States after having been removed and deported therefrom on or about May 7, 1999 at or near Washington, D.C. and on or about September 27, 2016 at or near Laredo, Texas, said removals being subsequent to a conviction for a felony, without having obtained the express consent of the Attorney General of the United States or the Secretary of the Department of Homeland Security to reapply for admission to the United States.

*Id.* at 3.

On June 3, 2026, the Court held a final pre-trial conference and at the request of the parties, took the Government's Motion *in Limine* under advisement. Dkt. 53.[1]

On June 8 and 9, 2026, a bench trial was held before this Court, during which time the Court heard testimony, admitted evidence, and heard argument. During trial, Defendant moved for acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, and the Court denied the motion.

## II. LEGAL STANDARD

"In a case tried without a jury, the court must find the defendant guilty or not guilty. If a party requests before the finding of guilty or not guilty, the court must state its specific findings of

---

[1] At the final pretrial conference, the parties informed the Court that they were working toward a resolution of the pending Motion *in Limine*. On June 8, 2026, prior to the commencement of the trial, the parties presented a stipulation which resolved the pending motion. Accordingly, the Motion is moot.

fact in open court or in a written decision or opinion." Fed. R. Crim. P. 23(c). "When . . . a jury trial is waived, the judge weighs the evidence, determines the credibility of the witnesses, and finds the facts." *United States v. Bales*, 813 F.2d 1289, 1293 (4th Cir. 1987); *see* 2 C. Wright, *Federal Practice and Procedure* § 374 (4th ed. 2020); *United States v. Kipp*, 2017 WL 2662983, at *2 (W.D.N.C. June 20, 2017) ("In a bench trial, the court's duty is to . . . choose from among conflicting inferences and conclusions those which the court considers most reasonable."). "The Court has wide discretion to select among conflicting inferences to be drawn from the testimony." *United States v. Higgins*, 2021 WL 342565, at *1 (W.D. Va. Jan. 31, 2021).

Here, notwithstanding the fact that the parties did not formally request an opinion, the Court provides its findings of fact and conclusions of law so that the parties may be aware of the basis for the Court's verdict. The Court, on its own motion, has elected to provide its findings.

## III. FINDINGS OF FACT

During its case in chief, the Government presented the testimony of a number of witnesses. Based on the testimony and exhibits admitted through these witnesses, the Court makes the following findings:

Defendant is a native and citizen of El Salvador and entered the United States for the first time on or about December 20, 1989. Defendant's immigration record and history is documented in his "A-file" under identification number A 29-895-110. Gov. Exh. 61-E. Defendant was ordered removed and was removed from the United States on May 7, 1999. Defendant subsequently re-entered the United States and, on September 27, 2016, was again removed. Defendant reentered the United States again sometime thereafter.

On June 16, 2025, Defendant sent a message ("Hello") via Facebook messenger to a profile he believed belonged to an individual named Estefany Mendez ("Mendez").[2]  Defendant's message went unanswered, but Defendant and Mendez subsequently became friends on Facebook. At the time Defendant and Mendez became friends on Facebook, Mendez's "About Me" section on her Facebook profile publicly listed her birthday as November 6 but did not publicly list a birth year.[3]

After becoming Facebook friends, on June 18, 2025, Defendant again messaged Mendez "Hello."  On that same day, Mendez replied, "Hello."  At that point, Defendant and Mendez had the following conversation regarding her age:[4]

> Defendant: "Are you married"
> Mendez: "No I'm only 14 years old"
> Defendant: "Really"
> Defendant: "Send me a picture of you"
> Mendez: "Yes, does that bother you?"
> Defendant: "Why"
> Mendez: Sends a photo
> Mendez: "I'm just asking if my age bothers you"
> Defendant: "No sweetie"
> ...
> Defendant: "Where in Virginia do you live baby"
> Mendez: "Fairfax"
> Defendant: "So if I invite you on the weekend will you go out with me"
> Mendez: "I'm not here this weekend"
> Mendez: "But I can this week"
> Defendant: "Can you Friday"

---

[2] Although the conversations between Defendant and Mendez were conducted in Spanish, the parties stipulated to English translations of those messages, and the Court relies on those translations for ease of review and clarity.  Govt. Exhs. 66, 67.

[3] Although disputed during the trial, after reviewing Government's Exhibit 7, the Court finds that Mendez's Facebook public profile settings displayed only her birth month and day to Defendant and that her birth year was set to "Only Me" such that only a user logged into Mendez's Facebook account could see the birth year listed as 2002.

[4] The Court excludes messages it deems irrelevant to conduct charged in the Second Superseding Indictment.

Mendez: "Yeah but it has to be before earlier"
...
Defendant: "Send me your number for text in normal message."
Mendez: "5715465180"
Defendant: "Your mom works at night"
Mendez: "Yes"

Govt. Exh. 1 at 4-13. Based on this conversation, Defendant had undeniable knowledge of Mendez's purported age of, and believed Mendez to be, fourteen years old. Mendez specifically communicated her age as fourteen, and Defendant confirmed that her age did not bother him, and he solicited a photograph from her.

All subsequent communication between Defendant and Mendez was conducted via text message or phone call.

Later, on June 18, 2025, Defendant continued the conversation with Mendez from the cell phone number 1-571-602-3707 and texted Mendez on the phone number that Mendez provided in the Facebook chats, 1-571-546-5180. In those messages, Defendant referred to Mendez as "baby" and "sweetie." Defendant asked Mendez whether she wanted to be his girlfriend, which Defendant informed her would include doing "everything" together. Defendant later specified that "everything" included sex and attempted to schedule a time to meet. After Defendant solicited another picture from Mendez, Defendant's texts became more explicit regarding their anticipated sexual interaction:

Defendant: "We're going to do it in the car baby"
Defendant: "Yes baby"
Mendez: "However you want...but are you going to bring condoms?"
Defendant: "Yes baby"
Mendez: "Okie"
Defendant: "Are you going to want me to give you in the behind as well baby"
Mendez: "You want to do that with me?"
Defendant: "Yes baby"
Mendez: "I've never done it"
Defendant: "I'm going to be gentle with you baby"
Mendez: "So will it hurt"

6

Defendant: "I will be the first baby"
Mendez: "Yes"
Defendant: "I'll do it to you with the condom baby"
Defendant: "So that it doesn't hurt you"
Mendez: "Are you going to bring lubricant?"
Mendez: "It's that I don't want it to hurt"
Defendant: "Yeah, I'll bring"
Defendant: "My thingy is little baby"
Mendez: "Ok"
Defendant: "Can I see yours baby"
Mendez: "See what"
Defendant: "Your thingy to see what it's like"
Mendez: "My thingy?"
Defendant: "Yeah baby"
Mendez: "I don't understand what you want?"
Defendant: "To see your thingy in a photo baby"
Mendez: "What is my thingy?"
Defendant: "Your thingy where I'm going to stick it all in you baby"
Mendez: "Oh my vagina?"
Defendant: "Yes, love"
Mendez: "Oh sorry I don't send photos like that"
Mendez: "Better in person"
Defendant: "Or your tit then"
Defendant: "I want to see how your nipples are"
Mendez: "I don't send sexy photos, sorry"
Defendant: "Just for me baby"
Mendez: "No better in person"
Defendant: "Just one baby come on"
Mendez: "I already told you no"
Defendant: "That's fine"

Govt. Exh. 2 at 24-38. On the following day, June 19, 2025, the Defendant re-initiated the

conversation with Mendez to discuss their anticipated sexual interaction:

Defendant: "Thinking about you baby"
Mendez: "Oh yeah? Thinking what?"
Defendant: "That you're going to be mine baby"
Mendez: "Nothing, walking around the house"
Defendant: "When your mom goes to work I'm going to pick you up baby"
Mendez: "Today?"
Defendant: "Friday baby"
Defendant: "I'm going home tomorrow"
Mendez: "Oh now I understood you"
Defendant: "What time does your mom come in?"
Mendez: "At 130"

7

Defendant: "Are we going to go out or are we staying in your house baby"
Mendez: "Whatever you want"
Defendant: "What part of Fairfax do you live in"
Mendez: "Close to Fairfax corner"
Defendant: "Oh yeah"
Defendant: "We're kinda close baby"
Mendez: "Oh yeah?"
Defendant: "Do you live in a house or no"
Mendez: "Townhouse"

…

Defendant: "Once we are together alone"
Mendez: "☺"
Defendant: "I'm going to kiss your whole body baby"
Mendez: "Oh yeah?? And what else?"
Defendant: "I'm going to do everything to you"
Mendez: "And afterwards what?"
Defendant: "What else you want me to do for you"
Mendez: "I don't know what would you like to do?"
Defendant: "You'll suck it for me" or "You'll suck mine"
Mendez: "Suck?"
Defendant: "Yeah"
Mendez: "What does that mean?"
Defendant: "For you to suck my penis baby"
Defendant: "I'll put it in your mouth"
Mendez: "You want me to do it"
Defendant: "Yeah"
Mendez: "Okay"
Defendant: "You live only with your mom"
Mendez: "Yeah"
Defendant: "What if I make you bleed when I give to you in the behind baby"
Mendez: "I thought you were going to do it gently"
Defendant: "Yes baby"
Mendez: "Ok so then why will there be blood"
Defendant: "Since I'm going to be the first"
Mendez: "Oh ok I don't want it to hurt"
Defendant: "Is your vagina big or small baby"
Mendez: "I don't know"
Mendez: "Why"
Defendant: "Just asking"
Mendez: "Oh ok"
Defendant: "What time does your mom arrive from work love"
Mendez: "Like at 11"
Defendant: "We're not going to be together very long"
Mendez: "I'm sorry"
Defendant: "Or do you want to be a long time with me baby"
Defendant: "And what if I do it to you without a condom baby"

8

Mendez: "If you arrive earlier we can"
Mendez: "I don't want to end up pregnant so what do we do"
Defendant: "I'll take you to where I live"
Mendez: "Ok"
Defendant: "Would you like that baby"
Mendez: "Yes but I can't arrive home so late"
Defendant: "I'm going to try to arrive as quickly as I can baby"
Defendant: "Take a picture of yourself as you are baby"
Mendez: "Okie"
Mendez: Sends a selfie

…

Defendant: "Are you going to send me the address today baby to arrive tomorrow love"
Mendez: "I'll send it tomorrow when you're getting off work"
Defendant: "Yes baby"
Defendant: "Love are you sure that no one can see us tomorrow when I enter your house"
Mendez: "We're going to meet in a park close to my house"
Mendez: "That way we won't be seen"
Defendant: "Yes love"

*Id.* at 41-73.

The next day, June 20, 2025, Defendant and Mendez resume their conversation:

Mendez: "So are we really going to see each other today??"
Defendant: "Yes baby"
Defendant: "Today"

…

Defendant: "How many kisses are you going to give me baby"
Mendez: "Yikes how many do you want?"
Defendant: " However many you want love"
Mendez: "I'm going to give you a whole lot"
Defendant: "Really baby"
Mendez: "Of course love!!"
Defendant: "Ok love"

…

Mendez: "What kind of car do you have"
Defendant: "Honda accord"
Mendez: Loved the message "Honda accord"
Mendez: "My aunt has one like that"
Mendez: "Hers is red"
Defendant: "No"
Defendant: "White"
Mendez: "No I was saying that my aunt's car is red"
Mendez: "I like white cars love"

9

Defendant: "Me too baby"
Defendant: "Are you going to wait for me in a skirt baby"
Mendez: "I only have jeans"
Mendez: "You'll have to buy a skirt for me"
Defendant: "Yeah baby"
Defendant: "I only want to see you in jeans send me a photo like that"
Mendez: Sends a photo of legs in jeans
Mendez: "Like what"
Defendant: "The thingy"
Mendez: "I don't send photos like that"
Defendant: "You see how you are"
Mendez: "What"
Defendant: "I'm going to see you with your cloths on"
Mendez: "So when are you coming?"
Defendant: "You haven't even sent me the address"
Mendez: "I'll send it to you now"
Defendant: "Ok"
Mendez: Sends a google maps link
Defendant: "That's to the park"
Mendez: "Yes"
Mendez: "We'll meet there since it's close to my house"
…
Defendant: "You want me to take condoms or not"
Mendez: "I don't want to end up pregnant"
Defendant: "When do you see us buying them"
Mendez: "You don't have them there"
Defendant: "No"
Mendez: "Why don't you buy them before you come"
Defendant: "You don't want to go with me"
Mendez: "It's better for us to not be seen buying together"
Defendant: "I'm just going to go out and buy some"
Mendez: "Ok"
Defendant: "And we'll do it in the park"
Mendez: "Whatever you want"
Mendez: "Or in the house"
Defendant: "Better in the house baby"
…
Defendant: "Alright I'm on my way over there baby"
Mendez: Like the message "Alright I'm on my way over there baby"
Mendez: "How long until I see you"
Defendant: "20 minutes"
Mendez: Sends heart emoji
…
Mendez: "Have you arrived?"
Defendant: "5 minutes"
Mendez: "Almost"

10

> Defendant: "I'll wait for you there"
> Mendez: "Yeah let me know when you're at the park and we'll meet there"
> Defendant: "Ok"
> Defendant: "Have you come out yet baby"
> Mendez: "Not yet"
> Mendez: "I'll come out when you arrive"
> Defendant: "Ok"
> Defendant: "I'll be there in two minutes"
> Mnedez: Liked message "I'll be there in two minutes"
> Defendant: "Now"
> Mendez: "You there?"
> Defendant: "Yes"

*Id.* at 78-142.

After Defendant confirmed that he had arrived at the park, Mendez, who was actually undercover police officer Claudia Castro, identified Defendant by his vehicle, the white Honda Accord that he had described his text messages. At that time, Defendant realized that police officers were present in the park and attempted to flee the scene. Defendant sped away, briefly colliding with one of the police vehicles, before driving out of the park and about one mile away into a neighborhood nearby. Police pursued Defendant's vehicle and caught up with him in a cul-de-sac. There, Defendant was apprehended, and the police officers retrieved identification, a cellular phone, and condoms from his vehicle. Gov. Exhs. 17, 34, 63.

The fingerprints in Defendant's immigration "A-file" match the fingerprints captured by Deputy Joseph McKenna of the Fairfax County Sheriff's Office on June 20, 2025. Govt. Exh. 61-I.

## IV. CONCLUSIONS OF LAW

The Second Superseding Indictment charges Defendant with conduct violating three statutes (1) Attempted Coercion and Enticement of a Minor in violation of 18 U.S.C. § 2422(b), (2) Attempted Sexual Exploitation of a Child in violation of 18 U.S.C. § 2251(a) & (e); and (3) Illegal Reentry After Removal Subsequent to a Felony Conviction in violation of 8 U.S.C.

11

§ 1326(a) & (b)(1). For the reasons stated below, the Court finds Defendant guilty of all three Counts.

### A.    Count One: Section 2422(b)

Count One of the Second Superseding Indictment charges Defendant with Attempted Coercion and Enticement of a Minor to Engage in Illegal Sexual Activity in violation of 18 U.S.C. § 2422(b). Thus, the Government had to prove the following elements beyond a reasonable doubt: (1) Defendant used a facility or means of interstate commerce (2) to knowingly persuade, induce, entice, or coerce or attempt to persuade, induce, entice, or coerce (3) an individual who Defendant believed to be a person under 18 years of age (4) to engage in an illegal sexual activity. *See United States v. Fugit*, 703 F.3d 248, 254 (4th Cir. 2012); *United States v. Kaye*, 451 F. Supp. 2d 775, 784 (E.D. Va. 2006), *aff'd*, 243 F. App'x 763 (4th Cir. 2007). Defendant was charged with attempt because there was no actual minor involved. Accordingly, the Government also had to prove that Defendant: (1) acted with the kind of culpability required for a conviction of the underlying substantive offense; and (2) engaged in conduct that constitutes a substantial step toward commission of the crime. *See Kaye*, 451 F. Supp. 2d at 786 (citing *United States v. Farner*, 251 F.3d 510, 513 (5th Cir. 2001); *United States v. Helder*, 452 F.3d 751, 755 (8th Cir. 2006)).

With respect to the first element, the Court finds beyond a reasonable doubt that Defendant used a facility of interstate commerce. Use of the internet necessarily involves interstate communications and therefore constitutes the "use of a facility of interstate commerce." *Kaye*, 451 F. Supp. at 782 (quoting *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004)). More specifically, courts have recognized that using Facebook, here Facebook Messenger, satisfies this element. *See, e.g., United States v. Barnes*, 831 F. App'x 425, 427 (10th Cir. 2020) ("Because Barnes received the images via Facebook messenger, an instrument of interstate

12

commerce, there was a sufficient factual predicate to support his guilty plea."); *Cooper v. United States*, 2020 WL 7390331, at *3 (C.D. Ill. Dec. 16, 2020) (finding, with respect to Section 2242(b), that the defendant used "the internet, or more specifically, Facebook"). Courts of Appeals similarly recognize that using a cellular telephone to send text messages is sufficient to establish use of a facility of interstate commerce. *See United States v. Pettis*, 379 F. App'x 864, 865 (11th Cir. 2010) ("Additionally, a telephone is a facility of interstate commerce, and answering the phone is "use" as that term is ordinarily defined. . . . Here, Pettis 'used' his cell phone, as that term is ordinarily understood, when he sent and received text messages arranging to meet A for sexual activity."); *United States v. Rodriguez-Cruz*, 681 F. App'x 312, 313 (5th Cir. 2017) (finding sufficient evidence of use of a facility of interstate commerce based on "series of cell phone calls and text messages followed to coordinate the exchange"). Thus, the Court finds beyond a reasonable doubt that Defendant's use of Facebook and text messages constitutes use of a facility of interstate commerce.

The Court further finds beyond a reasonable doubt that, in sending those Facebook and text messages, Defendant knowingly attempted to persuade, induce, entice, or coerce Mendez—an individual whom he believed to be fourteen years old. Courts of Appeals recognize that "18 U.S.C. § 2422(b) imposes no requirement that an individual endeavor to 'transform or overcome' the will of his intended victim." *United States v. Waqar*, 997 F.3d 481, 488 (2d Cir. 2021); *United States v. Williams*, 172 F.4th 791, 799 (9th Cir. 2026) ("The jury therefore only needed to find that Williams knowingly attempted to persuade, induce, entice, or coerce 'Rebecca' to engage in sexual acts with him, and not that 'Rebecca' had any particular mental state, which Williams transformed or overcame."). The Second Circuit has previously affirmed a defendant's § 2422(b) conviction after concluding that he had engaged in classic "grooming" behavior by "making the initial

13

contact" with an undercover agent and "continuously steer[ing] the conversation in the direction of sexual contact." *United States v. Brand*, 467 F.3d 179, 203 (2d Cir. 2006) (so holding even when agent initially broached the topic of sex and agent expressed no hesitation about having sex with the defendant). This behavior "is consistently understood by [the] circuits as falling squarely within the scope of § 2422 (b)'s prohibitions, irrespective of whether it is met with any resistance." *Waqar*, 997 F.3d at 488; *United States v. Howard*, 766 F.3d 414, 423-24 (5th Cir. 2014) (collecting cases); *see also United States v. Rutgerson*, 822 F.3d 1223, 1233-34 (11th Cir. 2016). "[A] defendant can be found to 'persuade' or 'entice' even a seemingly 'willing' minor." *United States v. Zupnik*, 989 F.3d 649, 654 (8th Cir. 2021). Similarly, the Fourth Circuit has routinely recognized that: "a minor's consent, assent, or voluntary participation, does not go to any element or defense." *United States v. Sanders*, 107 F. 4th 234, 257 (4th Cir. 2024). Here, the Court finds beyond a reasonable doubt that Defendant took steps to induce, persuade, and entice Mendez: (i) Defendant initiated the conversation with Mendez; (ii) Defendant asked to exchange phone numbers; (iii) Defendant solicited photographs from Mendez and continued to do so after she refused; and (iv) Defendant proposed that Mendez be his girlfriend and further instigated their sexual communications. Govt. Exhs. 1, 2. Thus, this Court finds beyond a reasonable doubt that Defendant did knowingly attempt to persuade, induce, and entice Mendez.

Next, it is important whether Defendant believed himself to be communicating with and enticing, coercing, persuading, or inducing a minor. *See United States v. Kelly*, 510 F.3d 433, 441 n.7 (4th Cir. 2007) ("We and other circuits have reached the same connection with 18 U.S.C. § 2422(b), which prohibits a person . . ." and have "uniformly rejected the argument that an actual child must be placed at risk to secure a conviction under § 2422(b)."). That is, the Government need not prove the existence of an "actual minor" but only that Defendant believed that Estefany

14

Mendez was below eighteen years of age. *See Kaye*, 451 F. Supp. 2d at 784. Here, the Court finds beyond a reasonable doubt that Defendant believed he was communicating with a 14-year-old girl by the name of Estefany Mendez. Indeed, Mendez specifically told Defendant, "I'm only 14 years old," and, when asked whether that bothered him, Defendant said, "No sweetie." Govt. Exh. 1 at 4-6. Their conversations also indicate that Defendant believed he was speaking to a minor. Defendant frequently asked questions and referred to Mendez's mother: "Your mom works at night," "You live only with your mom," "They won't scold you if you go out with me," "They let you out at night baby," "When your mom goes to work I'm going to pick you up baby," and "What if your mom sees it baby [referring to a hickey he planned to give Mendez]." Govt. Exhs. 1 at 14, 2 at 3, 42, 44, 57, 61, 69. These questions reflect Defendant's knowledge that Mendez must seek permission or have an excuse to meet up with him because she is a minor. This paired with Defendant's concerns about being seen with Mendez further demonstrate Defendant's belief that Mendez was a minor. Thus, the Court finds that this element is satisfied beyond a reasonable doubt.

Next, the Government must prove that Defendant was enticing, persuading, or inducing the minor *to engage in illegal sexual activity. See Kaye*, 451 F. Supp. 2d at 786. For the purposes of this count, the phrase "sexual activity" as used in § 2422(b) comprises conduct connected with the "active pursuit of libidinal gratification" on the part of any individual. *United States v. Fugit*, 703 F.3d 248, 255 (4th Cir. 2012). To that end, the Fourth Circuit has recognized that "such conduct need not involve interpersonal physical contact," but may rely on "the perpetrator's physical *or nonphysical* misuse or maltreatment of a minor for a purpose associated with sexual gratification." *Id.* (quoting *United States v. Diaz-Ibarra*, 522 F.3d 343, 349 (4th Cir. 2008)). The Fourth Circuit has recognized that Section 2422(b) "was designed to protect children from the act of solicitation

15

itself" and that it "criminalizes an intentional attempt to achieve a *mental* state – a minor's assent – regardless of the accused's intentions concerning the actual consummation of sexual activities with the minor." *United States v. Engle*, 676 F.3d 405, 419 (4th Cir. 2012) (citations and quotations omitted).

It is clear from his communications with Mendez that Defendant acted to entice, persuade, or induce her to engage in illegal sexual activity. Although the Court has not recited every text exchange between Mendez and Defendant here, the vast majority of the communications between the two pertain to meeting in person to engage in sexual conduct. The same day that Defendant initiated communication with Mendez, he told her that they would do "everything" as boyfriend and girlfriend. Govt. Exh. 1 at 8. Specifically, Defendant told Mendez that he would "give [her] a kiss," and "[m]ake love to [her]," which he clarified meant "[s]ex." *Id.* at 9-11. The Court finds beyond a reasonable doubt the various sexual acts that Defendant anticipated performing with an individual whom Defendant believed to be fourteen would violate Virginia Code § 18.2-370, Taking Indecent Liberties with Children, which makes it a crime for any person age 18 or over to propose to a child age 15 and younger the performance of an act of sexual intercourse.

Finally, the Court finds beyond a reasonable doubt that Defendant took a substantial step toward the commission of a § 2422(b) offense and acted with the requisite culpability. "An attempt to commit a crime, which is recognized as a crime distinct from the crime intended by the attempt, punishes conduct that puts in motion events that would, from the defendant's point of view, result in the commission of a crime but for some intervening circumstance." *United States v. Pratt*, 351 F.3d 131, 135 (4th Cir. 2003). The "mere intent to violate a federal criminal statute is not punishable as an attempt unless it is also accompanied by significant conduct." *United States v. Resendiz–Ponce*, 549 U.S. 102, 107 (2007). Although "words and discussions would usually be

16

considered preparations for most crimes, a specific discussion could be so final in nature that it left little doubt that a crime was intended and would be committed." *Engle*, 676 F.3d at 423 (citing *Pratt*, 351 F.3d at 135). This rule has particular force in prosecutions under § 2422(b) because "the very nature of the underlying offense—persuading, inducing or enticing engagement in unlawful sexual activity—necessarily contemplates oral or written communications as the principal if not the exclusive means of committing the offense." *United States v. Rothenberg*, 610 F.3d 621, 627 (11th Cir. 2010). Therefore, "an individual evaluation by the fact finder of the defendant's intent as disclosed by his words or speech is necessary in [almost] every prosecution under § 2422(b)." *Id.* In *Goetzke*, the Ninth Circuit recognized that, "when a defendant initiates conversation with a minor, describes the sexual acts that he would like to perform on the minor, and proposes a rendezvous to perform those acts, he has crossed the line toward [enticing] a minor to engage in unlawful sexual activity." *United States v. Goetzke*, 494 F.3d 1231, 1237 (9th Cir. 2007). Similarly, in *Broussard*, the Fifth Circuit held that "the prohibited act of persuasion can occur over a distance, as the statute expressly contemplates, and logic would appear to dictate that having discussions with [minors] about meeting to have sex is a substantial step toward persuading them to have sex." *United States v. Broussard*, 669 F.3d 537, 550 (5th Cir. 2012). Here, the Court finds beyond a reasonable doubt that Defendant's messages and his act of appearing at the designated location for his rendezvous with Mendez with condoms demonstrate a substantial step and the requisite culpability. *See, e.g., United States v. Flechs*, 98 F.4th 1235, 1244–45 (10th Cir.), *cert. denied*, 145 S. Ct. 310 (2024).

In sum, the Court finds beyond a reasonable doubt that the Government has established each of the elements necessary to demonstrate an attempted persuasion, coercion, enticement, or

17

inducement of a minor in violation of § 2422(b).  Accordingly, this Court finds Defendant guilty of violating 18 U.S.C. § 2422(b).

### B.    Count Two: Section 2251

Count Two of the Second Superseding Indictment charges Defendant with Attempted Sexual Exploitation of a Child in violation of 18 U.S.C. § 2251(a) & (e).  The Court again begins by reciting the law applicable to a § 2251(a) offense.  The Government must prove beyond a reasonable doubt three elements: (1) that the victim was less than 18 years old; (2) that Defendant used, employed, persuaded, induced, enticed, or coerced the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct or for the purpose of transmitting a live visual depiction of that conduct; and (3) that Defendant knew or had reason to know that such visual depiction would be or had been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce. *United States v. Malloy*, 568 F.3d 166, 169 (4th Cir. 2009); *United States v. McCauley*, 983 F.3d 690, 695 n.3 (4th Cir. 2020); 18 U.S.C. § 2251(a).  The terms "persuade," "induce," and "entice" are not statutorily defined, but they are to be given their "ordinary meaning" and are "effectively synonymous," conveying the idea "of one person leading or moving another by persuasion or influence, as to some action [or] state of mind." *Engle*, 676 F.3d at 411 n.3.  "Sexually explicit conduct" is statutorily defined as, *inter alia*, "sexual intercourse," "masturbation," and "lascivious exhibition of the anus, genitals, or pubic area of any person." 18 U.S.C. § 2256(2)(A).  And, again, because Defendant is charged with attempt, the Government must establish that Defendant took a substantial step towards completion of the crime and act with the requisite culpability. *See Kaye*, 451 F. Supp. 2d at 786.

18

Again, the Court finds beyond a reasonable doubt, for the reasons set forth above, that Defendant believed that Estefany Mendez was an individual less than 18 years old.

The Court likewise finds beyond a reasonable doubt that Defendant attempted to use, employ, persuade, entice, or coerce Estefany Mendez to take part in sexually explicit conduct. As the Fourth Circuit in *Sanders* recognized, the "terms employ, persuade, induce, entice, and coerce reach various types of external pressure that a defendant might apply on a minor to get him" to consent to engaging in such sexually explicit conduct. 107 F.4th at 257. As other Courts of Appeals have recognized, whether the alleged victim produced the material in question spontaneously or in response to persuasion by the defendant is a core issue going to this element of the offense. *See United States v. Streett*, 83 F.4th 842, 854 (10th Cir. 2023) ("Merely asking a minor for a naked photo, then, does not constitute persuasion under § 2251(a). Rather, there must be a 'calculated action' that involves 'pressuring the child, physically or psychologically, to engage in explicit conduct.'" (quoting *United States v. Heinrich*, 57 F.4th 154, 159 (3d Cir. 2023))); *Heinrich*, 57 F.4th at 159 ("The defendant cannot be a bystander. He must instigate sexually explicit conduct by the child, or by himself or a third party involving the child."); *United States v. Broxmeyer*, 616 F.3d 120, 125-26 (2d Cir. 2010) (reversing production and transportation convictions because, though there was evidence that the minor had made the images of herself, sent them to the defendant, and that he had complimented her on them, this was insufficient to show that the defendant had induced her to produce the images).

In this case, despite the lack of visual depictions, the Court finds beyond a reasonable doubt that Defendant attempted to persuade and induce Mendez into taking part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct. On numerous occasions, Defendant requested that Mendez send a photo of herself. The first time Defendant requests a

19

visual depiction, Defendant texts Mendez "Show me your thingy send photo." Gov. Exh. 2 at 21. In response, Mendez sends Defendant a photo of herself smiling, but unsatisfied, Defendant states "[G]ive me another picture baby." Moments later, while discussing the sex acts in which they would engage when they met in person, Defendant responds, "My thingy is little baby," "Can I see yours baby." *Id.* at 30-31. The two go back and forth regarding what Defendant means by "thingy," and Defendant again says, "To see your thingy in a photo baby." *Id.* at 33. When Mendez asks Defendant what is a "thingy," and if he means her "vagina," Defendant responds, "Yes, love." *Id.* at 34. Mendez responds to Defendant stating, "Oh sorry I don't send photos like that," and "Better in person." *Id.* at 35. Defendant again attempts to persuade Mendez into sending a photo, this time stating, "Or your tit then," and "I want to see how your nipples are." *Id.* at 36. Mendez informs him, "I don't send sexy photos sorry," and Defendant pleads, "Just for me baby." *Id.* at 36. Mendez tells Defendant, "No, better in person," yet Defendant, unrelenting, states, "Just one baby come on." *Id.* at 37.

The next day, June 19, 2026, while discussing their plans to meet up later that week along with the sexual acts they will perform, Defendant texts Mendez, "Take a photo as you are baby." *Id.* at 65. Mendez sends Defendant a photo of her face, smiling, and the two continue the conversation. *Id.* at 66. On June 20, 2026, again while discussing their meeting and sexual topics, Defendant texts Mendez stating, "Send me a photo to see how you'll be waiting for me." *Id.* at 84. Mendez sends another photo of herself smiling. *Id.* at 85. Moments later, he states, "I want to see you in jeans send me a photo like that." *Id.* at 95. Mendez then sends a photo of her legs in jeans. *Id.* at 96. Defendant replies "I want to see you higher up baby." *Id.* Mendez then asks, "Like what," to which Defendant responds, "The thingy." *Id.* at 97. Mendez again tells Defendant,

"I don't send photos like that," and, frustrated, Defendant replies, "You see how you are." *Id.* at 97, 98.

Although Mendez did not succumb to Defendant's repeated requests for lascivious photos of her genitals, Defendant nonetheless attempted to induce and persuade her into sending them. Defendant's multiple attempts to get Mendez to send him a photo despite her telling him no constitutes persuasion under the relevant statute. Given the sexual context of their communications and Defendant's incessant requests for explicit photos over the span of only a few days, this Court finds beyond a reasonable doubt that Defendant attempted to persuade or induce Mendez to take part in sexually explicit conduct—specifically the lascivious exhibition of her genitals—for the purpose of producing a visual depiction of that conduct.[5]

Again, these exchanges happened over text messaging. As discussed *supra*, the use of a telephone and text messages constitutes use of a facility of interstate commerce. *See Pettis*, 379 F. App'x at 865 ("Additionally, a telephone is a facility of interstate commerce . . . ."); *Rodriguez-Cruz*, 681 F. App'x at 313 (same) *Kaye*, 451 F. Supp. at 782. Thus, this Court finds beyond a reasonable doubt that Defendant used a facility of interstate commerce and intended that any such photographs created in response to his inducement, persuasions, and enticements would be transmitted via that facility of interstate commerce.

The Court further finds that Defendant's actions reflect a substantial step with the requisite culpability. Defendant continuously asked Mendez for photos of her "thingy" or "tit" despite

---

[5] The Court finds that nothing in the context of this case implicates the First Amendment as suggested by Defendant's counsel during trial, and federal courts have routinely rejected First Amendment challenges to §§ 2422 and 2251 based on speech attempting to arrange the sexual exploitation, coercion, or enticement of children. *See United States v. Beckman*, 624 F. App'x 909, 917 (6th Cir. 2015) (collecting cases) (rejecting First Amendment challenge to coercion and enticement counts).

believing her to be fourteen. Moreover, the Eighth Circuit has stated that "it is established that asking for an image of a minor's genitals constitutes a substantial step to produce child pornography." *United States v. Hensley*, 982 F.3d 1147, 1156 (8th Cir. 2020) (citing *United States v. Schwarte*, 645 F.3d 1022, 1030 (8th Cir. 2011)). Other circuits have similarly found that verbal requests for nude photographs of minors are sufficient to constitute the "substantial step" required for conviction of an attempt under § 2251(a). *See United States v. Moran*, 57 F.4th 977, 984 (11th Cir. 2023) (holding that defendant did not show that it was plain error to convict him of attempted production of child pornography when the "substantial step" supporting such was requesting parents send nude photographs of their children on "mom-blogs"); *United States v. Pavulak*, 700 F.3d 651, 670 (3d Cir. 2012) (holding that repeated requests for an individual to display the victim's vagina via a live webcam feed "was enough to constitute a substantial step toward 'coercing' [the victim] to 'engage in any sexually explicit conduct . . . for the purpose of transmitting a live visual depiction of such conduct'" in violation of § 2251(a)); *United States v. Wales*, 127 F. App'x 424, 431 (10th Cir. 2005) (stating that evidence that defendant asked an individual whom he believed was a 12-year-old girl to take photos of her genitals while using a false female persona was sufficient to support a conviction under § 2251(a)); *see also United States v. McGee*, 821 F.3d 644, 647 (5th Cir. 2016) (for a conviction under § 2251(a), "the jury must at least be able to draw the inference that the defendant encouraged a minor to take sexually-explicit pictures and send them to the defendant").

Thus, each of the elements of attempt to commit a violation of Section 2251(a) offense are satisfied beyond a reasonable doubt, and Defendant is therefore guilty of Count Two.

22

C.    Count Three: Section 1326(a)

Count Three of the Second Superseding Indictment charges Defendant with Illegal Reentry After Removal Subsequent to a Felony Conviction in violation of 8 U.S.C. § 1326(a) & (b)(1). In order to convict Defendant on this Count, the Government needed to prove the following elements beyond a reasonable doubt: (1) that Defendant was an alien at the time of the offense alleged, that is, not a citizen of the United States; (2) that Defendant was previously removed from the United States; (3) that Defendant was found in the United States; and (4) that Defendant failed to secure the express permission of the Attorney General or the Secretary of the Department of Homeland Security to apply for readmission to the United States. *United States v. Hernandez-Adame*, 157 F. 4th 662, 670 (5th Cir. 2025); *United States v. Moreno-Tapia*, 848 F. 3d 162, 165 (4th Cir. 2017). As the Supreme Court has held, the subsections of 8 U.S.C. § 1326 are penalty provisions, which simply authorize an enhanced sentence and do not create separate crimes. *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). Thus, the Government need not prove that Defendant has committed a felony at the time of indictment, as this factor is a sentencing enhancement to be considered by the Court, if applicable. *See id.*

For purposes of violations under this statute, "alien" is defined as a person who is not a natural-born or naturalized citizen, or a national of the United States. *Hernandez-Adame*, 157 F. 4th at 670. "Removal" means physical removal from the United States by the immigration authorities. *United States v. Duran-Cabrera*, 204 Fed. Appx. 635 (9th Cir. 2006). To be "found in" the United States means Defendant needs to be located in the United States following illegal reentry, and for "lack of consent to reenter," the Government must prove that before leaving from a place outside the United States to enter the United States, Defendant did not obtain the express consent of the Government to reapply for admission to the United States. *See* Federal Jury Practice

23

and Instructions § 61:10 Kevin F. O'Malley, Jay E. Grenig, Hon. William C. Lee, Nadine Jean Wichern.

Based on the testimony and exhibits presented at trial, the Court finds beyond a reasonable doubt that Defendant is an alien; namely, Defendant is a native and citizen of El Salvador. Gov. Exh. 61-H. The evidence admitted at trial further establishes that Defendant is not, and was not, a citizen of the United States. Gov. Exhs. 61-A-62.

The Court further finds beyond a reasonable doubt that Defendant was twice removed from the United States. Govt. Exh. 61-G. Specifically, the Notice of Intent/Decision to Reinstate Prior Order demonstrates that Defendant was removed from the United States on May 7, 1999, and again in September 2016. *Id.* Accordingly, this element has also been met beyond a reasonable doubt.

The testimony and exhibits introduced at trial, including the body camera footage, and Defendant's own messages, place Defendant in Fairfax County, Virgina on June 20, 2025. Gov. Exh. 33-A. Accordingly, the Court finds beyond a reasonable doubt that Defendant was found in the United States after removal.

Finally, the parties have stipulated to the truth and accuracy of Government Exhibit 61, which contains a Certificate of Nonexistence of Record in which Immigration Services Analyst, Karen East Williams, certifies that no record was found to exist indicating that Defendant applied for Application I-212, Application for Permission to Reapply for Admission into the United States After Deportation of Removal. Govt. Exhs. 61, 70. Accordingly, the Court finds beyond a reasonable doubt that Defendant lacked permission to re-enter the United States.

In short, the Government has established, beyond a reasonable doubt, that Defendant violated 8 U.S.C. § 1326(a). Accordingly, the Court finds Defendant guilty of Count Three.

24

## V.    VERDICT

In accordance with these findings of fact and conclusions of law, the Court FINDS, beyond a reasonable doubt, Defendant Mario Alexander Bonilla Canales GUILTY of Counts One, Two, and Three as charged in the Second Superseding Indictment.

Alexandria, Virginia
June __17__, 2026

/s/

Rossie D. Alston, Jr.
United States District Judge

25